McKinney, J.,
delivered the opinion of the court.
The complainants are the widow and minor children of John P. Wooldridge, deceased.
*298 It appears from the pleadings and proof in the canse, that on the 23d of January, 1836, said John P. Wool-dridge purchased from one John K. Yerger, a lot of ground with the improvements thereon, situated in the town of Pulaski, being lot, No. 30, in the plan of said town, at the price of $1500; and took from said Yerger a bond for the title upon payment of the purchase money. Wooldridge entered into possession of said property, in pursuance of his purchase. On the 8th of March, 1839, Wooldridge, without having received a conveyance of the legal title from Yerger, made a deed of trust including said lot, and other property, real and personal, to John 0. Walker, in trust, to secure the payment of certain debts; and after their discharge, to hold the balance of the property conveyed in further trust, to apply the annual rents, profits and hire thereof to the support of the complainant Susan, and also to the maintenance and education of the other complainants, his three children, until they should respectfully attain the age of twenty-one years or marry; and at the happening of either event, the complainants Mary, John, and Sarah, each to have one-third of the property or money remaining in the hands of the trustee.
It further appears that on the 15th day of June, 1840, the Planter’s Bank recovered a judgment in the circuit court of Giles, against said John 3L Yerger and others, for the sum of $1,626 73, upon which judgment an execution was issued on the 4th of May, 1841, and was levied on the lot in question, and the same was sold by the sheriff, on the 19th of June, 1841, to the Planter’s Bank, at the price of $500. Prom the foregoing dates it will be seen, that more than twelve months elapsed from *299 the rendition of the judgment, before the sale of said lot by the sheriff.
It further appears, that 'on the 27th day of June, 1810; twelve days after the - recovery of the foregoing judgment by the Bant against said John 3L Yerger, he, said Yerger, not having previously executed a deed to "Wooldridge, made a conveyance in fee of said lot to said John C. "Walker, “as trustee for John P. "Wool-dridge,” in pursuance of the title bond executed to Wooldridge, as the conveyance recites.
On the 21st of April, 1842, the sheriff conveyed said lot to the Planter’s Bank, under whom, by several intermediate conveyances, the defendant White claims title. In April, 1842, the Bank took possession of said lot, since when the Bank and those deriving title to said lot from the Bank, have had an uninterrupted possession of the same, holding adversely to the right of the complainants and their trustee, and all other persons.
Wooldridge died in' 1845, Prior to the execution of the deed of trust of March 1839, he had been subject to occasional derangement of mind, but very shortly after the date of said deed, he became utterly insane, and so continued up to the time of his death.
In September, 1841, Walker, the trustee, made an application to the chancery court, at Pulaski, to be permitted to resign his trust. The proceeding was regularly conducted in pursuance of the act of 1831, ch. 107, § 1. On the hearing, the chancery court decreed that his resignation be accepted and received, and that he be released and discharged from further responsibility on account of said trust.” And the chancellor thereupon proceeded to appoint Elisha White trustee, “in the room *300 and stead of said Walker resigned,” and directed that lie should enter into bond, conditioned for the faithful performance of his duty as such trustee; and “ that he take all of the trust funds into his possession not heretofore disposed of.” White, pursuant to his appointment, executed bond and security and accepted the trust. A schedule of the trust property, real and personal, which came to the possession of White as trustee, made out by him on the 20 th of April, 1842, is exhibited in proof, in which the lot in Pulaski is stated to have been sold by the Planter’s Bank upon its judgment against Verger, “ and so lost to the eestids que trust?
White, the trustee, died in the year 1844. He took no steps to resist the sale of the lot by the Bank, but seems to have acquiesced therein, regarding it as valid. Since his death, no other appointment of a trustee has ever been made.
This bill was filed on the 7th of February, 1852. The Bank and the several successive purchasers, of the lot, claiming under the Bank, and Walker, the original trustee, are made defendants to the bill; and it is sought to have the sheriff’s deed and the subsequent conveyances declared void; the possession of the lot surrendered to complainants, and an account of the rents and profits since April, 1842.
The chancellor decreed the relief prayed for, and the defendants have brought the case here by an appeal.
The decision of this case rests upon the question, whether or not the statute of limitations of 1819, interposes a bar to the relief sought by the bill. It is very clear that the sale of the lot upon the execution in favor of the Bank against Verger, not having been made *301 -within twelve months from the rendition of the judgment, ■was for that reason wholly inoperative against the conveyance from Yerger to the trustee made subsequent to the levy, to communicate any title to the hank. A sale within the period of twelve months, would have overreached and avoided the intermediate alienation by the judgment debtor to "Walker; but the sale not having been made within the time limited, the lien of the judgment ceased to exist at the expiration of the twelve months from the time judgment was rendered, and the voidable title of the trustee became perfect instantly upon the extinguishment of the creditor’s lien. 1 Swan’s R., 516. This being so, "Walker as trustee, became invested with a valid and exclusive title to the lot in question, by force of the conveyance from Yerger on the 2'Tth of June, 1840. And this leads us to consider of the legal effect of the proceeding in chancery instituted by "Walker, to be discharged of the trust. This proceeding was consummated on the 11th of September, 1841, and prior to the commencement of the adverse possession of the lot by the bank, which had its inception in April, 1842.
The decree accepting the resignation of "Walker and discharging him of the trust, and appointing White in his stead, is silent as to the title of the trust property; it does not in terms, either divest the legal title out of Walker or vest it in White, and the act of 1831, under which this proceeding took place, contains no jmovision for a change or transfer of the title to the trust estate, from the trustee who is permitted to resign to the successor appointed by the court., What then becomes of the legal title to the trust property, upon the resignation of the trustee? This is a question by no means free from *302 difficulty. To hold that the title still remains in the trustee, after he is formally discharged of the trust, would seem to he absurd. Upon this construction of the act, the resignation, of the trustee and the appointment of another in his stead, would he alike inoperative; because, while it would fail to discharge the first trustee effectually, from all future liability, it would leave his successor destitute of the power of exercising legal control over the trust property, for the want of title. To give the act any sensible construction or effect, it must be held, therefore, that upon the discharge of the first trustee, by implication of law the title is transferred to and becomes vested in the successor appointed by the court; and for the same reason, a like construction and effect must be given to the decree of the chancellor in the present case.
The title to the lot in controversy, could not be in ébeya/nce, and if it ceased to exist in "Walker by force of the decree, it cannot in view of the act of 1831, be held either to have reverted to the grantor or to have passed to the cestms gu& trust. It must, therefore, of necessity, be held either to have remained in Walker, notwithstanding his resignation; or to have passed by operation of law, to White the appointee of the court, and upon either of the latter assumptions, so far as respects the application of the statute of limitations to the present case, the result would be the same. For neither was under any legal incapacity to sue, or within any exception of the statute in April, 1842, when it is admitted that the adverse possession commenced. The statute then attached, and having commenced running, its operation could not be arrested or suspended otherwise than *303 by a suit in. law or equity effectually prosecuted. 1 Swan’s R., 96, 106. The death, of White in 1844, and the neglect to appoint another trustee in his place, can therefore have no effect in preventing the bar of the statute in the present case, and it is well settled that if a trustee, having the legal title, is barred by operation of the statute of limitations, the cestui que trust is also barred though an iniant.
The trustee, White, having died before the purposes of the trust were accomplished, and consequently before the termination of the trust estate, the title cannot be considered as having passed by operation of law, to the cestuis que trust upon his death. This is not a case for .the application of the principle laid down in Smith vs. Thompson, 2 Swan, 386. Vide post Aikin vs. Smith, p. 304. Neither is it a case for the application of the well settled principle relied upon in this case, that between successive wrong doers having no title, there can be no privity so as to allow of their possessions being united to make out the length of time requisite to form the bar of the statute of limitations. The possession under the sheriff’s deed was as operative under the first section of the act of 1819, as if it had been subject to no exception. The deed purports on its face, to convey an estate in fee simple; and, though voidable or even void in its inception, yet. it constitutes a sufficient assurance of title under the statute, to vest an indefeasible title coupled with seven years adverse possession.
We feel constrained, therefore, to hold that the statute of limitations forms a bar to the relief sought by the complainants’ bill.
*304 The decree will he reversed and the hill'dismissed, but without prejudice and also without costs.